**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

vs. No. CR 24-0770 JB

VICTORIA ORTEGA,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Brief in Support of Dismissing Petition, filed March 31, 2026 (Doc. 22)("Brief"). The Court holds a revocation hearing on March 19, 2026. See Clerk's Minutes at 1, filed March 19, 2026 (Doc. 21). The primary issue is whether Defendant Victoria Ortega commits, as a matter of law, a Grade C violation, where a mandatory condition of her supervised release is that she must not commit another federal, State, or local crime, and she pleads guilty to violating the City of Santa Fe's Municipal Ordinance 12-6-1.2 for speeding 16 to 20 miles per hour (MPH) over the Speed Limit, which results in Ortega receiving a deferred sentence. The Court concludes that Ortega commits, as a matter of law, a Grade C violation, where a mandatory condition of her supervised release states she must not commit another federal, State, or local crime, and she pleads guilty to violating Santa Fe's Municipal Ordinance 12-6-1.2, which results in Ortega receiving a deferred sentence, because the maximum penalty Ortega could face is not more than ninety days of imprisonment.

**FACTUAL BACKGROUND**

Ortega admits to the facts in the Petition for Revocation of Supervised Release, filed January 15, 2026 (Doc. 4)("Petition"). See Brief at 2 ("At the hearing, Ms. Ortega admitted to the factual basis of the allegations in the Petition, that being that she received two citations on

December 30, 2025, but denied that she had violated her conditions of release."). Further, the United States states that it "does not dispute the background and procedural history laid out in Defendant's Brief." United States' Response to Defendant's Brief in Support of Dismissing Petition at 1, filed April 10, 2026 (Doc. 23)("Response"). Accordingly, the Court briefly discusses its findings of fact below before addressing Ortega's legal arguments.

1. On December 30, 2025, the Santa Fe Police Department conducts a traffic stop on Ortega and issues her two citations -- (i) speeding 16 to 20 miles per hour (MPH) over the speed limit, in violation of Ordinance § 12-6-1.2; and (ii) No Proof of Insurance, in violation of Ordinance § 12-10-6. Petition at 1.

2. On February 2, 2026, Ortega appears in Santa Fe Municipal Court, where she shows proof of insurance and the municipal court dismisses the citation for No Proof of Insurance. See Brief at 2 (citing Santa Fe Municipal Court Docket No. TR-2025-0005084, filed March 31, 2026 (Doc. 22-1)).

3. During this same appearance on February 2, 2026, Ortega enters a no contest plea as to the Speeding 16 to 20 Miles Per Hour (MPH) Over the Speed Limit charge and receives a deferred sentence. Brief at 2 (citing Santa Fe Municipal Court Docket No. TR-2025-0005084).

4. A mandatory condition of Ortega's supervised release is that she "must not commit another federal, state, or local crime." Petition at 1.

## ANALYSIS

The primary issue before the Court is whether Ortega commits, as a matter of law, a Grade C violation of supervised release, where a mandatory condition prohibits the commission of any federal, State, or local crime, and Ortega enters a no contest plea to violating the City of Santa Fe's Municipal Ordinance § 12-6-1.2, resulting in the imposition of a deferred sentence. See FOF ¶ 3,

at 2.[1] Ortega argues that the Santa Fe Ordinance violation does not qualify as a Grade C violation, because the violation does not expose her to imprisonment. See Brief at 4 ("This section is also an enumerated penalty assessment misdemeanor with no possibility of imprisonment time."). The Court concludes that Ortega commits a Grade C violation as a matter of law, because the Guidelines require courts to consider "how the actual conduct giving rise to the violation is punishable under applicable law." United States v. Saavedra-Villasenor, 554 F. App'x 767, 771 (10th Cir. 2014)(unpublished)(emphasis in original).[2] Here, the dispute turns on the interpretation of "punishable" under U.S.S.G. § 7B1.1 and not on the penalty the court imposes. Saavedra-Villasenor, 554 F. App'x at 771.

The Guidelines define a Grade C violation as conduct constituting " a federal, state, or local offense punishable by a term of imprisonment of one year or less," or a violation of any other

[1] Ortega also makes arguments regarding the citation which the Santa Fe Police issued her for violation of the City of Santa Fe Municipal Ordinance 12-10-6, for no proof of insurance. The City of Santa Fe municipal court dismisses the no proof of insurance ordinance, however, after Ortega presents the Court with proof of insurance. See FOF ¶ 2, at 2. Accordingly, the Court does not consider this citation in deciding whether Ortega commits a Grade C violation. Ortega may have violated the law by not having the proof of insurance with her; the Court need not decide this issue, however, because there is no dispute that she violated § 12-6-1.2.

[2] United States v. Saavedra-Villasenor, 554 F. App'x 767 (10th Cir. 2014), is an unpublished opinion, but the Court can rely on a United States Court of Appeals for the Tenth Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Saavedra-Villasenor has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

condition of supervision. U.S.S.G. § 7B1.1(a)(3). The relevant inquiry is not the penalty that the court imposes in a particular case, see Saavedra-Villasenor, 554 F. App'x at 771 ("[T]he actual sentence imposed . . . is not the proper measure for classifying that offense as either a Grade B or Grade C violation."), but whether the government can punish the offense with a term of imprisonment. The United States Court of Appeals for the Tenth Circuit adopts this definition of "punishable" in United States v. Hernandez Garduno, 460 F.3d 1287 (10th Cir. 2006), and later applies the definition to supervised release violation categories in Saavedra-Villasenor, 554 F. App'x at 771 ("We have previously held that the word 'punishable' encompasses the full scope of punishment possible for an offense, 'irrespective of the actual sentence imposed.'" (quoting United States v. Hernandez–Garduno, 460 F.3d at 1293)). In Saavedra-Villasenor, the Tenth Circuit rejects the argument that a violation's grade depends on the sentence which the court imposes, explaining that the analysis turns on the "full scope of punishment possible for an offense." 554 F. App'x at 771. The Tenth Circuit joins the United States Court of Appeals for the District of Columbia, see Schrader v. Holder, 704 F.3d 980, 986 (D.C. Cir. 2013)(emphasizing "the commonsense meaning of the term 'punishable,' which refers to any punishment capable of being imposed"), and the United States Court of Appeals for the Ninth Circuit, United States v. Denton, 611 F.3d 646, 651 (9th Cir. 2010)("Whether a defendant has committed a Grade A or Grade C violation of his supervised release depends on the potential punishment for the underlying offense."). Accordingly, the Court must determine whether the government may punish a § 12-6-18 violation with a term of imprisonment, regardless whether the State imposes imprisonment.

Ortega argues that Ordinance § 12-6-1.2 falls outside of the definition of a Grade C violation, because the maximum penalty available under the ordinance is a fine, with no possibility of imprisonment. See Brief at 4. While Ortega is correct to consider not the penalty that the court

imposes in a particular case but the maximum penalty available under the statute, Ortega is incorrect in her assertion that the maximum penalty available under § 12-6-1.2 is a fine.

The City of Santa Fe Uniform Traffic Ordinance ("Santa Fe Mun. Code") Article VI governs traffic regulations, including the provision which Ortega violates, which prohibits speeding 16 to 20 miles per hour (MPH) over the speed limit. Santa Fe Mun. Code § 12-6-1.2. The ordinance does not specify, however, a penalty for violating the ordinance. See Santa Fe Mun. Code § 12-6-1.2. The Court therefore turns to Article XII, which governs penalties for violations of the Uniform Traffic Ordinance. See Santa Fe Mun. Code § 12-12 ("Penalties and Procedures on Arrest"). Section 12-12-1.1 provides:

> Unless another penalty is expressly provided in this ordinance or as otherwise provided by state law, every person convicted of a violation of any provision of this ordinance shall be punished by a fine of not more than three hundred dollars ($300.00) or by imprisonment for not more than 90 days or by both such fine and imprisonment.

Santa Fe Mun. Code § 12-12-1.1. Ortega offers no authority that § 12-6-1.2 is exempt from this general penalty provision. Instead, Ortega directs the Court to the Santa Fe traffic violation penalty assessment schedule, where she argues the "expressed maximum penalty" is -- $65.00. See Brief at 3-4 (citing Santa Fe Mun. Code Schedule A Traffic Violation Penalty Assessment Schedule). Schedule A assigns a $65.00 penalty to violations of § 12-6-1.2. See Santa Fe Mun. Code Schedule A Traffic Violation Penalty Assessment Schedule § 2. From this assignment, Ortega argues that imprisonment is not an available punishment.

This argument conflates an elective administrative resolution with the maximum penalty that the law authorizes. When an ordinance, such as § 12-6-1.2, qualifies as a penalty assessment misdemeanor, the City of Santa Fe Uniform Traffic Ordinance provides a mechanism by which a defendant may resolve certain violations by paying a fine, thereby avoiding further proceedings. See Santa Fe Mun. Code § 12-12-3(B). Section 12-12-3(B) states:

> Whenever a person is arrested for violation of a penalty assessment misdemeanor and elects to pay the penalty assessment, the arresting officer, using the uniform traffic citation, in paper or electronic form, shall complete the information section and prepare the penalty assessment notice indicating the amount of the penalty assessment, have the arrested person sign the agreement to pay the amount prescribed, give a copy of the citation along with a business reply envelope addressed to the municipal court with jurisdiction and release him from custody. No officer shall accept custody or payment of any penalty assessment. If the arrested person declines to accept a penalty assessment notice, the officer shall issue a notice to appear.

Santa Fe Mun. Code § 12-12-3(B). The existence of a penalty assessment option does not alter the statutory maximum penalty. The situation is similar to a rule 11(c)(1)(C) plea agreement in the Federal Rules of Criminal Procedure. See Fed. R. Crim P. 11(c)(1)(C). Through the plea agreement, the defendant elects to lower the maximum penalty in exchange for something else, such as avoiding trial, but the parties' agreement does not alter the imprisonment that is otherwise available.

Indeed, Schedule A Traffic Violation Penalty Assessment Schedule § 7 confirms that imprisonment remains available if the Defendant elects to proceed to court:

> If a penalty assessment is not paid within 30 days from the date of arrest, the violator shall be prosecuted for the violation charged on the penalty assessment notice in a manner as if the penalty assessment notice had not been issued. Upon conviction in such prosecution, the court shall impose penalties as provided for by the New Mexico Uniform Traffic Ordinance (Section 12-2-1.1), or other law relating to motor vehicles for the particular offense charge, and the scheduled penalty assessment shall not apply.

Santa Fe Mun. Code Schedule A Traffic Violation Penalty Assessment Schedule § 7. This provision makes clear that imprisonment is still available for penalty assessment misdemeanors, by referencing § 12-2-1.1 for the applicable penalty for a penalty assessment misdemeanor "if the penalty assessment notice had not been issued." Santa Fe Mun. Code Schedule A Traffic Violation Penalty Assessment Schedule § 7. As discussed above, § 12-2-1.1 provides for punishment by "a fine of not more than three hundred dollars ($300.00) or by imprisonment for not more than 90

days or by both such fine and imprisonment." Santa Fe Mun. Code § 12-2-1.1. The above provision demonstrates that, if Ortega declines the penalty assessment and proceeds to adjudication, she may face penalties that include imprisonment, subject to a ninety-day limitation. See Santa Fe Mun. Code Schedule A Traffic Violation Penalty Assessment Schedule § 2 ("When an alleged violator of a penalty assessment misdemeanor elects to accept a notice to appear in lieu of a notice of penalty assessment, the fine imposed upon later conviction shall not exceed the penalty assessment established for the particular penalty assessment misdemeanor and probation imposed upon a suspended or deferred sentence shall not exceed ninety days."). Accordingly, the offense remains punishable by imprisonment and therefore falls within the definition of a Grade C violation.[3]

Ortega also argues that her conduct, driving 18 MPH over the speed limit, is not "conduct that could have resulted in a penalty of imprisonment under any New Mexico regardless of what Ms. Ortega had ultimately been charged with," because her "actual conduct does not rise to the level of reckless driving or careless driving -- offenses that do carry terms of imprisonment under New Mexico law." Brief at 4. The Court agrees with Ortega that, on the record, her conduct does not rise to the level of reckless or careless driving. Her conduct, violation of Santa Fe Mun. Code § 12-6-1.2, however, carries a potential punishment of ninety days imprisonment. See U.S.S.G. § 7C1.1 cmt. n. 1 ("The grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade

---

[3] The United States argues that the "Defendant's traffic violations also fall into the second category of Grade C violations, which includes violations of a defendant's conditions of supervised release, even if this conduct is not a violation of 'a federal, state, or local offense punishable by a term of imprisonment of one year or less,'" because "[t]his condition is not limited to offenses punishable by a term of imprisonment, but also includes crimes punishable by penalties or fines." Response at 1-2 (quoting U.S.S.G. § 7C1.1(a)(3)). The Court does not reach this argument, however, because the Court concludes that Ortega's traffic violations constitute a local offense punishable by a term of ninety days, thereby qualifying as a Grade C violation.

of the violation is to be based on the defendant's actual conduct."). Accordingly, Ortega's conduct qualifies as a Grade C violation. The Court concludes that Ortega violates a mandatory condition of supervised release by committing a local crime and therefore commits a Grade C violation.

**IT IS ORDERED** that: (i) Defendant Victoria Ortega has violated her mandatory condition of supervised release that she "must not commit another federal, state, or local crime"; (ii) Ortega commits a Grade C violation pursuant to the United States Sentencing Guidelines § 7B1.1; (iii) Ortega's criminal history category is I; and (iv) Ortega's Grade C violation and criminal history category of I, under the United States Sentencing Guidelines § 7B1.4, establishes a revocation imprisonment range of 3 to 9 months.

UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Maria Stiteler
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Jacqueline Hoswell
The Law Office of Ryan Villa
Albuquerque, New Mexico

*Attorneys for the Defendant*